Prabhu Mohaptra
16619 S. 37th Way
Phoenix, Arizona  85048
480.706.1417



# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Anil Kumar Chawla,** )<br>)<br>**Plaintiff** )<br>)<br>v. )<br>)<br>**Prabhu Mohapatra,** )<br>)<br>**Defendant** )<br>_____ ) | Case: 02-40198-NMG |

## PRETRIAL ARGUMENT

**ISSUE**

Defendant alleges a violation by Plaintiff of the anti cyber squatting laws of the United States.  Specifically, a violation of 15 USC 1125(d).

**RULE**

That law states in relevant part:

> Any person who, on or in connection with any goods or services...uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

(d) Cyberpiracy prevention (1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person - (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and (ii) registers, traffics in, or uses a domain name that - (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or (III) is a trademark, word, or name protected by reason of section 706 of title 18 or section 220506 of title 36.

(B)(i) In determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, but not limited to -
(I) the trademark or other intellectual property rights of the person, if any, in the domain name;
(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
(VIII) the person's registration or acquisition of multiple domain names

which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

(C) In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.

**ANALYSIS**

The attached exhibits well establish the existence of my business All India On-Line. in 1997. This is more than two years before Plaintiff registered his domain name. For example, in July 1996, International Science and Technology was incorporated (ISTI) to provide high tech products and services. In June 1997, I was invited by the Government of India's officials in Houston, Texas to invest in India and have a collaborative business between International Science and Technology, Inc. The name we chose for the for the company to conduct Info. Tech. business was All India On-Line. In September 1997, we were authorized to incorporate All India On-Line, Pvt. Ltd. in India, on behalf of ISTI and it's principals. We started promoting and soliciting business in the Trade name and as a division of ISTI. As a result, we have acquired common law trademark rights. In October 1997, we registered the domain name AIOL and prepared for trademark "AIOL All India On-Line" registration with US department of commerce. We hosted a website with the trade name All India On-Line at www.aiol.com. In November 1997, we conducted business with Indian and US based organizations and promoted the trade name amongst the prospective investors and clients such as the Government of Orissa, India www.orissa.org

and IEDSO a nonprofit organization promoting investment in India from the US www.iedso.org.

In January 1998, we filed an application with the US Department of Commerce for registration of Trademark "AIOL All India On-Line" and in May 1998, All India On-Line, Pvt. Ltd. (India) was completely incorporated. In October 1999, we objected to unauthorized use of trademark All India On-Line by Mr. Chawla and requested him to stop unauthorized use of our trademark. At the same time, the Department of Commerce, approved and published our Trademark "AIOL All India On-Line" in the official gazette. It was at this point that Plaintiff began to demand payment of $300,000 for return of our domain name. We refused and this suit followed after we learned Chawla intended to profit from the site by displaying banner ads and promoting the site to the public.

All India Online still continues business in collaboration with ISTI and CELMEX (Comercio En Linea Mexico S.A. de C. V). All India Online is in the business of Web Hosting, Web Designing, E-commerce, E-business, Offshore IT enabled services, Internet portal serving Indian Community Worldwide with a goal in Connecting Indians Worldwide[TM]. All India Online is a prominent trademark created, marketed, and established by Prabhu Mohapatra and his associated entities since 1997 and continuing to provide IT services to US, Mexico and Indian clients and still a direct division of ISTI. AIOL All India OnLine[TM] is a trademark very well recognized by the cyber communities and the prominent search engines and portals worldwide.

I have established my prior and continued existence and thus my common law trademark rights. Having said this, the question really is if Plaintiff has any ownership rights in the domain name he registered. Clearly he does not.

In fact, he merely registered it to hold it hostage. I refer this court to several cases on point here. Gallo Winery v. Spider Web, 286 F3d 270, Lucas Nursery v. Grosse, 359 F3d 806, and Taubman v. Webfeats, 319 F3d 770. Plaintiff has advertised on the site to draw in people and promoted it to the public in the hopes of financial gains in the future. Here, one gain he tried to pursue was demanding I pay him $300,000 to buy the domain name from him. Based on the ACPA list of nine examples, it is clear Plaintiff had bad intent. For example, he knew he has no rights to it, the name contains the full legal name of my company not his, he never had any prior use before me, he had no noncommercial use for it such as using the site to share pictures with his family, he presented a false affidavit for use by America Online against me, he told me I would only get the name if I paid him $300,000, he did not engage in VII and VIII on the list but I did in the normal course of my business and to protect myself, and my mark is famous in India and the US and Mexico.

## CONCLUSION

In sum, although he conducts no business with the name now, he did in the past and has in effect held my property rights as a hostage. Plaintiff has acted in bad faith. Accordingly and consequently, he should be ordered to release my property from being held hostage because he has no rights in it, ordered to pay me $100,000 for his bad faith intentions, and his claims should be dismissed with prejudice.

RESPECTFULLY submitted April 29, 2004

Prabhu Mohapatra
Self Represented

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2004 the foregoing Pretrial Argument was deposited with the United States Postal Service, via regular mail, in an envelope addressed to:

Anil Chawla
16 Shrewsbury Green Drive, Unit H
Shrewsbury, Massachusetts 01545

Prabhu Mohapatra
Self Represented