# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ――――――――――――――― ) | | |
| ) | | |
| ANIL KUMAR CHAWLA, ) | | |
| Plaintiff, ) | | |
| ) | **Civil Action** | |
| vs. ) | **No. 02-40198-NMG** | |
| ) | | |
| PRABHU MOHAPATRA, ) | | |
| Defendant, ) | | |
| ) | | |
| ――――――――――――――― ) | | |

|  |  |
|---|---|
| ――――――――――――――― ) | |
| AIOL ALL INDIA ON LINE, PVT. LTD., ) | |
| PRABHU MOHAPATRA, and INTERNATIONAL ) | |
| SCIENCE AND TECHNOLOGY, INC., ) | |
| Plaintiffs, ) | |
| ) | **Civil Action** |
| vs. ) | **No. 03-40084-NMG** |
| ) | |
| ANIL KUMAR CHAWLA, and ) | |
| HIMANI CHAWLA, ) | |
| Defendants, ) | |
| ――――――――――――――― ) | |

## REPORT AND RECOMMENDATION
### August 29, 2005

**SWARTWOOD, C.M.J.**

### Nature of the Proceeding

By Order of Reference dated April 9, 2004, this case was referred to me to receive the party's written submissions concerning their claims and counterclaims, conduct a hearing on

those claims and counterclaims and to prepare a Report and Recommendation, facts final, in accordance with 28 U.S.C. §636.

A hearing was held on May 24 and May 25, 2004, and at that hearing, numerous exhibits were filed and admitted as evidence and at the conclusion of the hearing, I requested that the parties file post-trial pleadings, including suggested findings of fact and conclusions of law. Anil Kumar Chawla has filed a post-trial pleading entitled "Plaintiff's reply in response to court's trial (Facts, Law and Conclusion)"(Docket No. 62) and the Prabhu Mohapatra has filed Proposed Findings of Fact and Conclusions of Law (Docket No. 63).

<u>Nature Of The Case</u>

Anil Kumar Chawla ("Mr. Chawla"), Prabhu Mohapatra ("Mr. Mohapatra") and AIOL All India On-Line, Pvt. Ltd. ("AIOL Pvt") have asserted claims against each other arising out of Mr. Mohapatra's objection to Mr. Chawla's having registered and subsequently refused to surrender the domain name "**allindiaonline.com**"[1]. The substance of the parties' claims and the byzantine procedural history of this case are described in greater detail below.

---

[1]"A domain name is `any alphanumeric designation which is registered with or assigned by any domain name registrar, domain name registry, or other domain name registration authority as part of an electronic address on the Internet'. To obtain a domain name, a would-be registrant simply makes application to a registrar ... submits a fee, and agrees to the terms of the domain name registration agreement. Domain names are assigned on a first-come, first-served basis". <u>Barcelona.com, Incorporate v. Excelentisimo Ayuntamiento De Barcelona</u>, 330 F.3d 617, 623-24 (4th Cir. 2003)(internal citation omitted)(quoting 15 U.S.C. § 1127).

Background

On October 23, 2002, Mr. Chawla filed a complaint in this Court seeking damages in the amount of $300,000 for the loss of his Internet site and the emotional stress endured as a result of alleged harassment and threatening behavior by Mr. Mohapatra and his business associate Sanjay Sangani ("Mr. Sangani").

On October 31, 2002, AIOL Pvt, International Science and Technology, Inc. ("ISTI") and Mr. Mohapatra filed a complaint against Mr. Chawla and his wife, Himiani Chawla ("Mrs. Chawla") in the United States District Court for the District of Arizona (the "former Arizona Action"), alleging that the failure of Mr. and Mrs. Chawla to surrender the domain name **"allindiaonline.com"** constitutes cybersquatting in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. §1125(d) and intentional interference with Mr. Mohapatra's business.  On April 10, 2003, the court (Sedgwick, D.J.) allowed Mr. and Mrs. Chawla's motion for change of venue and transferred the case to this Court (Mr. and Mrs. Chawla's motion to dismiss, which was converted into a motion for summary judgment by the court, was denied.)  On August 11, 2003, the former Arizona Action, which was docketed in this Court as <u>AIOL All India On Line, Pvt. Ltd. v. Chawla</u>, 03-cv-40084-NMG, was consolidated with this case.

On August 28, 2003, Mr. Chawla filed a motion to amend his complaint to assert claims against Messrs. Mohapatra and Sangani:

4

seeking a declaratory judgment that his registration and use of the domain name **allindiaonline.com** did not violate the ACPA; seeking a declaratory judgment that he did not violate the Lanham Act, 15 U.S.C. §1125(a)(1); and for unspecified tortious conduct.

On December 12, 2003, this Court (Gorton, D.J.), issued an Order (see Docket No. 34):

> 1.   allowing Mr. Chawla's motion to amend his complaint;

> 2.   allowing Mr. Mohapatra's motion to dismiss the unspecified tort claims asserted in the complaint, as amended; and

> 3.   denying Mr. Mohapatra's motions For Summary Judgment with respect to the claims he has asserted against Mr. Chawla in the former Arizona Action.

By Order dated April 6, 2004 (Docket No. 52), this Court (Gorton, D.J.) dismissed Mr. Chawla's claims against Mr. Sangani.

Therefore, as a result of the Court's prior orders, the following claims remain in this consolidated lawsuit:

> 1.   Mr. Chawla's claims against Mr. Mohapatra seeking a declaratory judgment that his use of the domain name "**allindiaonline.com**" did not violate the ACPA and that he has not violated Mr. Mohapatra's rights under the Lanham Act, 15 U.S.C. §1125(a); and

2.   Mr. Mohapatra's, ISTI's and AIOL Pvt's claims against Mr. and Mrs. Chawla for violation of the ACPA and for intentional interference with Mr. Mohapatra's business.[2]

## Findings of Fact

1.   On July 10, 1996, ISTI was incorporated in the State of Arizona.  Mr. Mohapatra was President of ISTI at the time of its incorporation.  On December 3, 1999, ISTI was dissolved by the Arizona Corporation Commission for failure to file annual reports, but on February 14, 2000, ISTI was reinstated and has filed annual reports since that date.  Def's. Ex. A.

2.   On or about June 30, 1997, ISTI entered into a Memorandum Of Understanding with the ORISSA State Electronics Development Corporation Ltd., a governmental entity located in Orissa, India, to set up a project for internet value added services and software development.  Def's. Ex. C.

3.   On September 1, 1997, a Memorandum Of Understanding was entered into between ISTI and TEKONS, an entity located in Orissa, India to expand ISTI's development of the Internet and Internet related software and hardware in India.  "All India On-Line (AIOL)" was to be the trademark of the internet division of ISTI in India (emphasis added).  Def's. Ex. D.

_____

[2]There is no evidence to support Mr. Mohapatra's and/or AIOL Pvt's claims against Mrs. Chawla either for violation of the ACPA or intentional interference with Mr. Mohapatra's business.  Therefore, judgment should enter for her with respect to all such claims.

6

4.   On   October   29,   1997,   AIOL   Pvt,   which   was   an unincorporated  business  entity  located  in  Orissa,  India[3]  and/or ISTI, registered the domain name: **"AIOL.com"** for the period October 29, 1997 through October 29, 1999.  Def's. Exs. E and Q.[4]

5.   On January 13, 1998, Mr. Mohapatra, as President of ISTI, filed an application with the United States Department of Commerce, Patent  and  Trademark  Office  ("PTO"),  for  a  service  mark  which contains  a  design  (an  outline  of  the  Americas,  Europe,  Africa  and Asia  covered  by  a  star  shape)  with  "AIOL"  in  Bold  superimposed  on top  of  the  design  and  just  below  "AIOL",  in  smaller  letters,  the phrase  "All  India  On  Line".   In  his  application,  Mr.  Mohapatra stated  that  the  mark  was  first  used  in  commerce  on  October  29, 1997. Def's Ex. F.

6.   In his application, Mr. Mohapatra described the services provided by "AIOL All India On Line" as: "providing multiple-user access  to  a  global  computer  information  network  for  the  transfer and dissemination of wide range of information". Id.

7.   A  search  result  obtained  from  the  PTO's  Trademark Electronic  Search  System[5],  indicates  that  Mr.  Mohapatra's application  for  the  service  mark,  "AIOL  All  India  On  Line",

---

[3]On May 1, 1998, AIOL Pvt was incorporated in Orissa, India.  Def's Ex. G.

[4]According to Exhibit E (a printout of a search result), "AIOL.com" was registered to AIOL Pvt.  However, according to Exhibit Q (a Network Solutions, Inc. invoice), "AIOL.com" was registered to ISTI.

[5]See http://tess2.uspto.gov/bin/showfield?ftoqbqn.31.

contains a disclaimer that: NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "INDIA ONLINE" APART FROM THE MARK AS SHOWN.  <u>Def's. Ex. H</u>.

8.   The PTO published notice of Mr. Mohapatra's application for the service mark, "AIOL All India Online" on September 7, 1999. <u>Def's Ex. H</u>.

9.   On October 10, 1999, an opposition was filed with the PTO by America Online against Mr. Mohapatra's application to register the service mark "AIOL All India On Line". <u>Id.</u>

10.   In December 2002, American Online, the party objecting to Mr. Mohapatra's attempt to register "AIOL All India On Line", sent Mr. Mohapatra a proposed settlement agreement wherein American Online would agree to Mr. Mohapatra's use of a trademark "AIO ALL INDIA ONLINE".  <u>Def's. Ex. I</u>. However, no settlement has been reached and at present, the matter remains pending before the Trademark Trial and Appeal Board.  Therefore, the service mark "AIOL All India On Line" is not a registered service mark.

11.   At the time that Mr. Mohapatra attempted to register "AIOL All India On Line" as a service mark, he was aware of how to register a domain name as evidenced by the following: (i) on October 29, 1997, AIOL Pvt registered the domain name "**aiol.com**" (the administrative and technical contact listed for this domain name was "All India On-Line, Pvt. Ltd (India) domain aiol.com" located in Orissa, India (<u>Def's Ex. E</u>));  (ii) on February 11, 1998, ISTI registered the domain name **"ISTI.net"** (the

8

administrative contact listed for this domain name was Mr. Mohapatra, in Arizona and the technical contact for this domain name was "All India On-Line, Pvt. Ltd (India) domain aiol.com" located in Orissa, India[6]. (Pl's Ex. 2).); and (iii) on December 12, 1998, ISTI registered the domain name **"CELMEX.com"** (the administrative contact listed for this domain name was Mr. Mohapatra, in Arizona and the technical contact for this domain name was "All India On-Line, Pvt. Ltd (India) domain aiol.com" located in Orissa, India" Id..)

12.  On February 8, 1999, Mr. Chawla d/b/a Science Vision International registered the domain name: **"ALLINDIAONLINE.com"** effective through February 8, 2005. Pl's Ex. 1.  Mr. Chawla began using this domain name beginning in the summer 1999. Pl's Ex. 3, at which time he advertised his website as "a Yellow Page directory for Indian Community".  Pl's Ex. 4.  Prior to this time, Mr. Chawla's website was under construction.

13.  Mr. Chawla did not start receiving significant traffic on his website until September 1999.

14.  At the time that Mr. Chawla registered **allindiaonline.com** as a domain name, he was not aware of ISTI or AIOL Pvt.

15.  There is no evidence that Mr. Chawla's Internet Web site resembles AIOL All India On-Line Pvt's web site, nor is there any evidence to suggest that Mr. Chawla has adopted or attempted to use

---

[6]At the time, AIOL was not incorporated.

any mark associated with his Internet web site which is remotely
similar to AIOL All India On Line Pvt's mark, as previously
described. See supra, Fact Finding No. 5.

16.  By letter dated October 6, 1999, Mr. Mohapatra and Mr.
Sangani sent Mr. Chawla and his wife a letter, via fax and by mail,
which stated in relevant part:

> This letter is to notify you to Cease and
> Desist immediately from using our Trademark
> "ALL INDIA ON LINE" for any Internet Related
> Services, Software, Hardware, or Mulitmedia
> Applications. Formal civil and criminal legal
> action will follow upon our assessment of
> damages caused by your unauthorized use of our
> Trademark.

Pl's. Ex. 7 (emphasis in original).

17.  The basis for Mr. Mohapatra's letter was that Mr.
Chawla's domain name, **allindiaonline.com**, allegedly violated a
trademark issued to ISTI, which the letter indicated had been in
use since October 29, 1997 and registered with the PTO since
December 23, 1997. Id.

18.  I find that at the time the letter was sent to Mr. and
Mrs. Chawla, neither Mr. Mohapatra nor any company with which he
was affiliated had been issued a certificate of registration by the
PTO for the mark "All India On Line". See supra, Fact Finding No.
10.

19.  After receiving Mr. Mohapatra's letter, Mr. Chawla felt
threatened by Mr. Mohapatra and immediately closed down his web
site **allindiaonline.com**.

20.  Mr. Mohapatra started demanding that Mr. and Mrs. Chawla pay him for damages suffered by him and his companies as a result of their use of the domain name **allindiaonline.com.**  Initially, Mr. Mohapatra demanded that the Chawla's pay him $300,000.  Thereafter, Mr. Mohapatra indicated to Mr. Chawla that he and his businesses had lost multiple millions of dollars as the result of Mr. Chawla's use of the domain name **allindiaonline.com** and his demands increased accordingly.

21.  Neither Mr. nor Mrs. Chawla ever communicated to Mr. Mohapatra that they would transfer the domain name **allindiaonline.com** to him for a sum of money.

22.  On March 5, 2000, AIOL Pvt registered the domain name **"allindiaonline.net"**; on December 29, 2001, that same entity registered the domain name **allindiaonline.org**; on February 8, 2002, that same entity registered the domain name **"ALLINDIAONLINE.CC"**; and on November 1, 2002, that same entity registered the domain name **"ALLINDIAONLINE.INFO"**.  Pl's Ex. 2.

23.  Mr. Mohapatra registered "AIOL/All India Online" as a trade name in Arizona on May 13, 1999, over three months after Mr. Chawla had registered the domain name **allindiaonline.com**.  Def's. Exs. B&O.

24.  In the application filed with the State of Arizona, Mr. Mohapatra stated that domestic use of "AIOL/All India On Line" began on May 1, 1997.  However, although the mark may have been

11

used in India at that time, there is no evidence in the record which would support a finding that "AIOL/All India On Line" was being used in the United States at the time that Mr. Chawla registered the domain name **allindiaonline.com**.[7]  In making this finding, I have reviewed in detail the multiple news clippings, letters and Internet printouts submitted by Mr. Mohapatra in support of his contention that "AIOL ALL India On Line" was being used in the United States in February 1999.  On the contrary, a number of these materials indicate that at that time, AIOL All India On Line primarily serviced the Indian community in India.

25.  In September 2003, AIOL Pvt filed an application to register All India On-Line as a trademark in India.  Def's Ex. P. This application was subject to a disclaimer of the expression "All India & Indians."  Id.  There is no evidence that this trademark was ever accepted by the Trademark Office in India.

26.  On October 29, 2004, AIOL Pvt registered the domain name "**allindiaonline.co.in**" in India. Def's Ex. N.

27.  There is no evidence that Mr. Chawla has ever registered any other domain names.

<u>Discussion</u>

Mr. Chawla is seeking a declaratory judgment that he did not violate the ACPA or Mr. Mohapatra's rights under the Lanham Act by

---

[7]In his application to the PTO, Mr. Mohapatra stated that the mark "AIOL All India On Line" had first been in use and first been in use in "commerce" since October 29, 1997. <u>Def's Exs. E&H.</u>

registering and/or using the domain name **allindiaonline.com**.  Mr.
Mohapatra, on the other hand, seeks a finding that Mr. Chawla
violated the ACPA and requests that the domain name
**allindiaonline.com** be transferred to him, ISTI and/or AIOL Pvt and
that Mr. Chawla be ordered to pay him/them damages in the amount of
at least One Hundred Thousand Dollars.  Mr. Mohapatra also claims
that Mr. Chawla's use of the domain name **allindiaonline.com**
constituted intentional interference with his business.

Initially, I will address Mr. Chawla's request that this Court
determine whether he has violated the Lanham Act.  I will then
address the parties' respective ACPA claims and Mr. Mohapatra's
claim for interference with his business.

## Whether Mr. Chawla's Use Of **allindiaonline.com** violates the Lanham Act

Mr. Mohapatra has asserted in letters and other communications
to Mr. and/or Mrs. Chawla, that Mr. Chawla's use of the domain name
**allindiaonline.com** constitutes infringement of Mr. Mohapatra's
unregistered service mark "AIOL All India On Line".  Mr. Chawla
seeks a determination that his use of the domain name
**allindiaonline.com** did not violate Mr. Mohapatra's rights under the
Lanham Act, which protects both registered and unregistered
trademarks and service marks.

13

For Mr. Chawla's use of "**allindiaonline.com**" to constitute infringement of Mr. Mohapatra's unregistered service mark[8] "AIOL All India On Line": (1) Mr. Mohapatra's service mark must be valid and entitled to protection, (2) Mr. Mohapatra must own the service mark, and (3) Mr. Chawla's use of "**allindiaonline.com**" must be likely to create confusion concerning the origin of his services. In determining whether "All India On Line" is a protected service mark, I must first "consider the strength of the mark ... Marks may be categorized as 1) generic, 2) descriptive, 3) suggestive, 4) arbitrary or 5) fanciful". <u>Cathey Assoc., Inc. v. Beougher</u>, 95 F.Supp.2d 643, 650 (D.Mass. 2000)(internal citations omitted). "While once conceived as distinct categories, these labels are now commonly viewed as `central tones in a spectrum' where the strength of the mark and its protection increases as it moves away from generic and descriptive toward arbitrary and fanciful". <u>Id.</u> Thus, a generic mark, that is a mark that is a "common name" of a good or service, is not entitled to protection and "may not be registered nor used exclusively by one competitor, even if it has acquired

---

[8]As stated previously, Mr. Mohapatra has filed an application to register "AIOL All India On Line", together with a distinctive design, as a service mark. A "service mark" is "any word, name, symbol, or device, or any combination thereof" used "to identify and distinguish the service of one person ... from services of others ...". 15 U.S.C. §1127 (Supp. 2005). However, in communications to Mr. Chawla and elsewhere, Mr. Mohapatra has indicated that "All India On Line" is a protected trademark. A "trademark" is "any word, name, symbol, or device, or any combination thereof", used "to identify and distinguish ... goods ... from those manufactured or sold by others and to indicate the source of the goods". 15 U.S.C. §1127. It is clear that "AIOL ALL India On Line" is being used to promote a service, as opposed to goods. Therefore, to the extent "AIOL All India On Line" is entitled to protection, it would be as a service mark.

14

secondary meaning". <u>Home Builders Assoc. of Greater St. Louis v.</u>
<u>L&L Exhibition Mgmt., Inc.</u>, 226 F.3d 944, 949 (8th Cir. 2000);
<u>Cathey</u>, 95 F.Supp.2d at 650.  "A descriptive term `identifies a
characteristic or quality of the article or service,' and may only
be protected after proof of secondary meaning ... Words or phrases
which fall within the last three categories [i.e., suggestive,
arbitrary or fanciful], are inherently distinctive `because their
intrinsic nature serves to identify a particular source of a
[service]' and are eligible for protection without proof of
secondary meaning.". <u>Cathey</u>, 95 F.Supp.2d at 650 (internal
citations and citation to quoted case omitted).

There can be no doubt that the phrase "All India On Line" is
generic, or, at best, descriptive[9].  Indeed, Mr. Mohapatra, in his
application to the PTO to register "AIOL All India On Line" as a
service mark, expressly disclaimed the exclusive right to use
"India On Line".  Mr. Mohapatra has not offered any argument to
justify why the addition of the word "ALL" would render the phrase
subject to protection.  A generic service mark is per se entitled
to no protection and therefore, use of such a mark does not
constitute infringement.  Even if the phrase "AIOL All India On
Line" can be said to be descriptive rather than generic, because it

---

[9]I have so determined because it requires no imagination to conclude from
"All India On Line" that reference is being made to an Internet Site or service
that focuses on India or Indian products and the words used are all common and
not phrased in a unique manner, nor are the words in any way inventive.
Therefore, the suggestive, fanciful and arbitrary categories do not apply.

identifies a source of the service (AIOL Pvt), as discussed below, the evidence before me falls far short of establishing that it has acquired secondary meaning in the United States.[10]

Mr. Mohapatra avers that his mark has been in public use since 1997. However, the record establishes that for the most part the mark, if used at all, has been used in India. I have found that the the mark is not distinctive. Furthermore, there is no evidence: that the mark is famous; that Mr. Mohapatra has spent substantial sums either to develop or promote the mark or the services offered in connection with the mark; or that the mark is widely recognized by the public and the public associates the mark with Mr. Mohapatra, AIOL Pvt or ISTI, or any services offered by them. At best, the evidence establishes that AIOL Pvt has operated an Internet Web Site within the past few years which offers web hosting, web designing, domain name and similarly related services. Furthermore, Mr. Mohapatra's self-serving statements made in his application to the PTO and the State Of Arizona (in his application for a trade name) and in advertisements contained on AIOL Pvt's website and elsewhere that "AIOL All India On Line" has been in

_____

[10]"Secondary meaning is acquired when, in the minds of the public, the primary significance of a mark `is to identify the source of the product [or service] rather than the product itself'". Home Builders Assoc., 226 F.3d at 949 n.6 (alteration in original, citation to quoted case omitted). Secondary meaning can be established through evidence including: "direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the [alleged infringer]". Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc., 198 F.3d 1143, 1151 (9th Cir. 1999).

public use since 1997 fall far short of the evidence needed to establish that such a weak descriptive mark has achieved secondary meaning.  <u>See</u>   <u>Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.</u>, 198 F.3d 1143 (9th Cir. 1999)(even if court were determine "Filipino Yellow Pages" was not generic, such a weak descriptive phrase could be protected trademark only if there was strong showing of secondary meaning, which there was not).  Under these circumstances, I find that Mr. Chawla's use of **allindiaonline.com** as a domain name does not violate the Lanham Act.[11]

<u>The ACPA Claims</u>

"[T]he ACPA mak[es] it illegal for a person to register or to use with the `bad faith' intent to profit from an Internet domain name that is `identical or confusingly similar' to the distinctive or famous trademark or Internet domain name of another person or company".  <u>Shields v. Zuccarini</u>, 254 F.3d 476, 481 (3[d] Cir. 2001).  The purpose of the ACPA was to prevent "cybersquatting", i.e., "the bad faith, abusive registration and use of the distinctive trademarks of others as Internet domain names, with the intent to

_____

[11]In making this determination, I express no opinion as to the certifiability of Mr. Mohapatra's PTO application, which not only includes the phrase "All India On Line", but also "AIOL" and an apparently unique design.  Mr. Mohapatra may obtain certification to exclusively use a "picture" design which includes a generic name, even though he obtains no right to the generic name itself.  <u>See</u> <u>Retail Services Inc. v. Freebies Publishing</u>, 364 F.3d 535, 549 (4th Cir. 2004).  As I have previously found, there is no evidence that Mr. Chawla's Internet web site included a picture or design similar to the one that Mr. Mohapatra is seeking to register with the PTO.

17

profit from the goodwill associated with those trademarks." <u>Id.</u>
The ACPA became effective on November 29, 1999, and although it
applies to domain names registered before its effective date,
damages are not available with respect the registration or use of
a domain name that occurs prior to that date. <u>See</u>
Anticybersquatting Consumer Protection Act, Pub.L.No.106-113, Div.
B, §1000(a)(9)[Title III, §3010], 113 Stat. 1536, 1501A-552 (1999);
<u>see also</u> <u>March Madness Athletic Assoc. LLC v. Netfire, Inc.</u>, 120
Fed.Appx. 540, 545 (5th Cir. 2005); <u>E.&J. Gallo Winery v. Spider
Webs Ltd.</u>, 286 F.3d 270, 277 (5th Cir. 2002)(although neither actual
nor statutory damages may be awarded for registration of domain
name prior to effective date of ACPA, damages are available for any
use of domain name after that date).

Since I have found that "All India On Line" is not a protected
mark, and because Mr. Chawla did not seek to register a domain name
which was similar to a famous or distinctive domain name that had
already been registered by Mr. Mohapatra, ISTI or AIOL Pvt[12], I find
that Mr. Chawla did not violate the ACPA. <u>See</u> <u>Retail Services, Inc.
v. Freebies Publishing</u>, 364 F.3d 535, 549 (4th Cir. 2004)(alleged
owner of trademark cannot state claim under ACPA where court has
determined that trademark is not entitled to protection).
Therefore, Mr. Chawla has the right to retain and use the domain

_____

[12]At the time, the only remotely similar domain name which had been
registered by Mr. Mohapatra, ISTI or AIOL Pvt was aiol.com.

name **allindiaonline.com** and judgment should enter for Mr. Chawla with respect to the parties' respective claims under the ACPA.

In the event that the District Court Judge disagrees with my determination that Mr. Mohapatra and AIOL Pvt do not have a protected interest in "All India On Line", for the sake of completeness, I will determine whether they would be entitled to monetary damages if it is determined that Mr. Chawla's registration and/or use of **allindiaonline.com** violates the ACPA.

First, assuming that Mr. Mohapatra and/or AIOL Pvt had a protected interest in "All India On Line", they would be foreclosed from seeking monetary damages against Mr. Chawla since it is undisputed that his registration and use of the domain name **allindiaonline.com** occurred prior to the effective date of the ACPA. Second, if it is determined that Mr. Chawla violated the ACPA, he would not be liable to Mr. Mohapatra and/or AIOL Pvt for monetary damages because I find that he had reasonable grounds to believe that his registration and use of **allindiaonline.com** was "fair ... or otherwise lawful", <u>see</u> 15 U.S.C. §1125(d)(ii), that is, he lacked the bad faith intent which is a prerequisite to imposing liability under the ACPA. In making this determination, I have considered those factors which the ACPA suggests are most relevant to determining bad faith intent, including, that: 1) Mr. Chawla was unaware of Mr. Mohapatra's and/or AIOL Pvt's use of "AIOL All India On Line" and therefore, when registering and using

**allindiaonline.com**, he did not act with any intent to divert customers away from AIOL Pvt's Internet web site, nor did he intend to mislead consumers concerning sponsorship of the site; 2) Mr. Chawla made no attempt to profit from registering **allindiaonline.com** in the sense that he did not demand money from Mr. Mohapatra and/or AIOL Pvt in return for transferring the rights to that domain name to them; 3) Mr. Chawla did not provide material false or inaccurate contact information when registering the domain name; 4) Mr. Chawla has not registered multiple domain names which were identical or confusingly similar to others' famous or distinctive marks; and 5) Mr. Chawla was using the domain name as part of a legitimate Internet web site offering bona fide services and/or goods. See 15 U.S.C. §1125(d)(B)(i)(listing factors for court to consider in determining whether person has bad faith intent to profit from use of another's mark when registering, trafficking in or using a domain name).[13]   Under these circumstances, I would find that judgment should enter for Mr. Chawla on Mr. Mohapatra's and AIOL Pvt's claim for damages against him for violation of the ACPA.

---

[13]That Mr. Chawla does not have any trademark or other intellectual property rights in **"allindiaonline"** is irrelevant since I have determined that this phrase is not entitled to such protection.  Therefore, the only factors cited by the ACPA which could be found to evidence bad faith on Mr. Chawla's part are that the domain name does not consist of Mr. Chawla's legal name, nor any name used to refer to him, and his site may have been used for commercial purposes (whether Mr. Chawla's actual use of his web site was for commercial or non-commercial use is unclear). See 15 U.S.C. §1125(d).  However, I do not find that these factors support a determination that Mr. Chawla acted in bad faith.

## Mr. Mohapatra's Claim For Intentional Interference With His Business

Mr. Mohapatra has failed to adequately address, in his submissions or the presentation of his case, his claim against Mr. Chawla for interference with his business.  It is not even clear whether he believes Massachusetts or Arizona law applies to his claim.  However, it is not necessary for me to determine whether Arizona or Massachusetts law applies to Mr. Mohapatra's claim because under the law of either jurisdiction, Mr. Mohapatra has failed to establish the necessary elements of a claim for tortious interference with a business relationship/opportunity. Specifically, Mr. Mohapatra has failed to establish that Mr. Chawla's conduct was wrongful, or that he acted with the necessary ill motive or intent.  Therefore, judgment should enter for Mr. Chawla with respect to this claim.

### Conclusion

I recommend that Judgment enter:

1. declaring that Anil Kumar Chawla has not infringed on Prabhu Mohapatra's and/or AIOL All India On-Line, Pvt. Ltd.'s rights under the Lanham Act, 15 U.S.C. §1125(a) and Anil Kumar Chawla has not violated the Anticybersquatting Consumer Protection Act, 15 U.S.C. §1125(d) by registering, trafficking in or using the domain name **allindiaonline.com**; and

2. for Anil Kumar and Himiani Chawla on Prabhu Mohapatra's, International Science and Technology, Inc.'s  and AIOL All India

21

On-Line, Pvt. Ltd.'s claims for violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. §1125(d) and interference with Mr. Mohapatra's business.

## Notice to the Parties

The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court WITHIN 10 DAYS of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objection. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court's order entered pursuant to this Report and Recommendation. See United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980). See also, Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985).

/s/Charles B. Swartwood, III
CHARLES B. SWARTWOOD, III
CHIEF MAGISTRATE JUDGE